P. E. GUERIN, INCORPORATED, PLAINTIFF-RESPONDENT, v. HUBERT T. PARSON, OWNER, DEFENDANT-APPEL-LANT, AND WILLIAM BAUMGARTEN & COMPANY, INCORPORATED, BUILDER, DEFENDANT.

Argued October 17, 1933—Decided January 5, 1934.

For the defendant-appellant, *Arthur T. Vanderbilt.*

For the plaintiff-respondent, *Lum, Tamblyn & Colyer* (*Ralph E. Lum*).

The opinion of the court was delivered by

BODINE, J.   The owner appeals from a judgment in a mechanics' lien action.   The appellant caused to be erected a residence in West Long Branch.   The Thompson-Starrett Company built the outside structure.   William Baumgarten & Company, Incorporated, agreed to finish the interior.   No contract in writing was filed.   Such plans as existed when the work commenced were altered to meet the owner's wishes. P. E. Guerin, Incorporated, the plaintiff below, was the maker of hardware used in the interior of the house.   It was chosen by Baumgarten & Company with the approval of the owner.   The price of the total hardware sold was more than $81,000.   The balance due for which the lien was claimed

amounted to $21,466.44. The hardware was all specially made and was installed by Baumgarten & Company. Materials were furnished from April 18th, 1929, to April 27th, 1931.

Samples of Guerin hardware were first shown to Mr. Parson in 1928. With his approval, blue prints and drawings were furnished Guerin, Incorporated, and a rough estimate made. Blanket orders were then given for the hardware for the solarium and the first, second and third floors. Although each piece of hardware was specially made, the testimony indicates that special orders for each piece were given pursuant to an agreement that Guerin should have the contract for the entire hardware used throughout the house and the solarium. The separate orders were given perhaps because the hardware was all specially hand made and frequent changes were made.

There was no error in refusing to grant a nonsuit or direct a verdict in favor of the defendant. The testimony abundantly shows that the principals involved treated the matter as an undertaking to furnish the entire hardware to complete the residence. Manifestly the manufacture of the special hardware was treated as being done under an entire contract and lump sum settlements were made. Although Mr. Parson moved into the house at Thanksgiving time, 1930, still it appears that hardware to complete was continuously furnished until April 27th, 1931. Some of the pieces ordered long before the occupation of the house were not completed until long afterwards. Of course, changes and replacements were made. It is manifest that there was a purpose at whatever cost to furnish a house perfect in every detail. The testimony supports the findings which the jury must have made that at the inception of the work, as well as during its progress, there was a unity of purpose to treat the separate items as an aggregate indebtedness. *Downingtown Manufacturing Co.* v. *Franklin Paper Mills,* 63 *N. J. L.* 32.

By chapter 212 (*Pamph. L.* 1930, *p.* 972), the Mechanics' Lien act was amended effective September 2d, 1930. This amendment provides: "that no one shall be entitled to a lien under the provisions of this act or any act supplementary

hereto or amendatory hereof for any labor performed or materials furnished prior to the filing in the office of the clerk of the county wherein the land and building to be affected by such lien is situate, a mechanic's notice of intention to perform such labor or furnish such materials, which notice shall be signed by or on behalf of the one for whose benefit the same is filed" and, &c. However, this statute had no retroactive application to merchandise, the delivery of which was long before contracted for. On the proofs adduced the question of the entirety of the contract was one for the jury.

"Under the statutory liability created by the act, where the contract *inter partes* has not been filed, it becomes immaterial to inquire whether the owner paid the contractor and whether the contractor paid his subcontractors, the only inquiry being whether the materialman has been paid. *Gardner & Meeks Co.* v. *New York Central Railroad Co.*, 72 *N. J. L.* 257." *Boynton Lumber Co.* v. *Evans*, 101 *N. J. L.* 120, 121.

The date of the completion of the building under the proofs was a fact question to be settled by the jury. *Bell* v. *Mecum*, 75 *N. J. L.* 547, 548. It often happens that the owner moves into an incompleted house in order to hasten the completion of the work. The proofs made the date of completion a fact question for the jury and this issue was squarely presented to them in a charge which followed the pertinent rules of law.

The lien claimant on January 24th, 1931, received notes from the Baumgarten firm. Baumgarten, to finance the work, had borrowed upon the Parson account receivable a large amount of money from a New York bank. Later Parson gave Baumgarten his note, which was turned over to the New York bank. In turn, Baumgarten gave the lien claimant notes, which were not paid and upon which some money was received when proved as a claim in bankruptcy. Whether the lien claimant took the notes in payment of the debt due him depends upon whether there was an agreement so to do. *Taylor* v. *Wahl*, 72 *N. J. L.* 10. The proofs made the question one for the jury. Testimony indicates that Baumgarten, at the time he gave the notes to Guerin, stated that his notes would be met from the proceeds of Parson's notes. But it is

obvious that he had placed himself in such position that he could not so do, but was in fact bankrupt as was shortly demonstrated. The jury might with propriety have found, as they did from the proofs offered, that there was no agreement to take the notes in settlement of the debt for which the lien claim was filed. "Taking notes for a lien claim is no abandonment of the lien security, and if the notes are not paid at maturity the claimant may enforce his lien in the same manner as if the notes had never been given." *Edwards* v. *Derrickson,* 28 *N. J. L.* 39.

As to the court's refusal of the defendant's requests to charge, it is necessary to say only that in so far as the requests possess merit they were substantially charged. The jury must have found, as they could well do under the proofs adduced, that the notes were not received in extinguishment of the debt, but as a mere postponement of the time to enforce the obligation. Since bankruptcy intervened before the lien claim was filed the notes did not operate to suspend the enforcement of the lien. Upon bankruptcy, the notes became immediately provable as a debt due at a future time from which a present discharge was sought. Bankruptcy having intervened before the maturity of the notes the lien claimant lost none of the rights which existed under the Mechanics' Lien law.

The contention is made that the verdict of the jury was for an amount in excess of the damage proved. If so, application should have been made to the trial judge for correction of the amount of the verdict.

Other matters suggested in the argument of counsel require no further discussion.

The judgment below is affirmed, with costs.

*For reversal*—None.